[Cite as *Dublin Express Transport Solutions, Ltd. v. Ohio Dept. of Job & Family Servs.*, 2018-Ohio-3877.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Dublin Express Transport Solutions, Ltd., :

                Appellant-Appellant, :           No. 17AP-604

                                  (C.P.C. No. 13CV-13521)

v. :

Ohio Department of Job :
and Family Services,

                 :

                Appellee-Appellee. :

                 :

No. 17AP-604
(C.P.C. No. 13CV-13521)

(ACCELERATED CALENDAR)

D E C I S I O N

Rendered on September 25, 2018

**On brief:** *Breen Law*, and *John E. Breen*, for appellant.
**Argued:** *John E. Breen.*

**On brief:** *Michael DeWine*, Attorney General, and *Susan M. Sheffield*, for appellee. **Argued:** *Susan M. Sheffield.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, Dublin Express Transport Solutions, Ltd., dba Wheels to Go ("Dublin Express"), appeals from a decision of the Franklin County Court of Common Pleas affirming a decision of the Ohio Unemployment Compensation Review Commission ("commission") finding Dublin Express to be a liable employer under unemployment compensation law. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} Dublin Express operates a transportation service for passengers to and from medical appointments pursuant to agreements with government agencies. Dublin Express enters into lease agreements with its drivers, providing that Dublin Express will provide

dispatch service and use of a vehicle in exchange for a lease fee comprised of a percentage of any fare the driver obtains for transporting passengers.

{¶ 3} Appellee, Ohio Department of Job and Family Services ("ODJFS"), conducted a compliance audit of Dublin Express. On August 2, 2012, ODJFS issued a final audit report finding Dublin Express was not in compliance with R.C. 4141.01(B)(1) and Ohio Adm.Code 4141-9-04(A) because it classified its drivers as independent contractors, and payments to those drivers were excluded from its reports to ODJFS. Pursuant to the audit, ODJFS issued a notification of its determination of Dublin Express's liability and contribution rate. Dublin Express requested reconsideration of the final audit report, asserting it improperly classified the drivers as employees rather than independent contractors.

{¶ 4} The Director of ODJFS issued a reconsidered decision affirming the liability and contribution rate determination. The Director concluded Dublin Express retained the right of direction and control of the drivers and therefore met the statutory definition of an employer with respect to the drivers.

{¶ 5} Dublin Express appealed the Director's reconsidered decision to the commission. A hearing officer conducted a hearing on the appeal on November 15, 2013. The owner of Dublin Express, Yasir Ahmed, testified at the hearing. Ahmed explained that when a passenger needs transportation, he or she contacts Dublin Express and provides the relevant details to a dispatcher. The dispatcher then contacts the lead driver to determine whether he or she can transport the passenger. Individual drivers are not obliged to agree to transport any passenger and may select their own days and hours of availability. If the first contacted driver is unable to transport the passenger, the dispatcher will then proceed to contact other drivers until one is found to take the assignment.

{¶ 6} Ahmed testified Dublin Express owns seven wheelchair accessible minivans and two sedans that are leased to drivers. The vehicles bear a Wheels to Go logo. Each driver takes the vehicle home at the end of the day. Dublin Express insures the vehicles and the drivers are listed on the insurance policy. Dublin Express also pays for maintenance and repair of the vehicles. At the beginning of a lease, the driver is given a vehicle with a full tank of gasoline and is required to return it with a full tank of gasoline at the end of the lease; during the period of the lease and while using the vehicle, the driver pays for gasoline.

Dublin Express enters into contracts with various government agencies to transport their clients and the fare rates are set by contract. The driver receives 50 to 60 percent of the fare rate for each transported passenger. At the conclusion of a ride, the passenger presents the driver with a voucher issued by the respective government agency; the driver then turns that voucher over to Dublin Express to be redeemed from the agency. Dublin Express issues checks to its drivers on a weekly basis, which are picked up from the Dublin Express office. Ahmed testified a driver may choose to stop taking jobs, terminate the lease, and return the vehicle whenever they choose.

{¶ 7} Following the hearing, the commission issued a decision affirming the Director's reconsidered decision. After reviewing the factors set forth in the Ohio Administrative Code, the commission concluded the drivers were subject to sufficient direction and control by Dublin Express and therefore were employees of Dublin Express.

{¶ 8} Dublin Express appealed the commission's decision to the Franklin County Court of Common Pleas. The common pleas court affirmed the commission's decision, concluding there was reliable, probative, and substantial evidence to support the commission's conclusion that Dublin Express had the right to direct or control the drivers in the performance of their services and that they were employees of Dublin Express.

## II. Assignments of Error

{¶ 9} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] THE LOWER COURT ERRED IN UPHOLDING THE AGENCY'S DETERMINATION THAT APPELLANT'S DRIVERS ARE NOT INDEPENDENT CONTRACTORS AND ARE DEEMED EMPLOYEES FOR PURPOSES OF OHIO UNEMPLOYMENT COMPENSATION CLASSIFICATION.
>
> [II.] THE LOWER COURT ERRED AND DENIED APPELLANT EQUAL PROTECTION OF LAW IN FAILING TO CONSIDER THAT OTHER AGENCIES HAVE CLASSIFIED THE DRIVERS AS INDEPENDENT CONTRACTORS.

## III. Discussion

{¶ 10} Under R.C. 4141.26(D)(2), a decision of the commission may be appealed to the Franklin County Court of Common Pleas, which may affirm the decision if it finds,

based on a review of the entire record, the decision is supported by reliable, probative, and substantial evidence and is in accordance with law. *BNA Constr., Ltd. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-317, 2017-Ohio-7227, ¶ 24. If the common pleas court finds the commission's decision is not supported by reliable, probative, and substantial evidence and is not in accordance with law, it may reverse, vacate, or modify the decision, or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 4141.26(D)(2). On appeal to this court from a decision of the common pleas court, we apply a narrower standard of review. As to issues of fact, we review the trial court's decision for abuse of discretion. *Id.* at ¶ 25. In this context, "[t]o find an abuse of discretion, we must conclude that the trial court's decision is without a reasonable basis and clearly wrong." *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. With respect to issues of law, however, we exercise plenary review. *BNA Constr.* at ¶ 25.

{¶ 11} Dublin Express argues in its first assignment of error that the common pleas court erred by affirming the commission's conclusion that the drivers were employees for purposes of the unemployment compensation system. Dublin Express asserts the drivers were independent contractors rather than employees.

{¶ 12} Ohio employers pay contributions into the state's unemployment compensation fund. R.C. 4141.23(A). The definition of "employer" includes any individual or entity that "[h]ad in employment at least one individual." R.C. 4141.01(A)(1)(a). "Employment" is defined as "service performed by an individual for remuneration under any contract of hire, written or oral, express or implied * * * unless it is shown to the satisfaction of the director [of ODJFS] that such individual has been and will continue to be free from direction or control over the performance of such service, both under a contract of service and in fact." R.C. 4141.01(B)(1). The statute provides that the director of ODJFS shall adopt rules to define "direction or control." R.C. 4141.01(B)(1). Pursuant to that statutory authority, Ohio Adm.Code 4141-3-05 provides that, with certain exceptions, a worker is in employment when an employer-employee relationship exists between the worker and the person for whom services are performed and the director determines that (1) the person for whom services are performed has the right to direct or control the performance of the services, and (2) remuneration is received by the worker for the services

performed. Ohio Adm.Code 4141-3-05(B) sets forth 20 factors drawn from the common law as an aid to determine whether there is sufficient direction or control to constitute employment.  The 20 factors, which must be considered in totality, are as follows:

> (1)  The worker is required to comply with the instructions of the person for whom services are being performed, regarding when, where, and how the worker is to perform the services;
>
> (2)  The person for whom services are being performed requires particular training for the worker performing services;
>
> (3)  The services provided are part of the regular business of the person for whom services are being performed;
>
> (4)  The person for whom services are being performed requires that services be provided by a particular worker;
>
> (5)  The person for whom services are being performed hires, supervises or pays the wages of the worker performing services;
>
> (6)  A continuing relationship exists between the person for whom services are being performed and the worker performing services that contemplates continuing or recurring work, even if not full time;
>
> (7)  The person for whom services are being performed requires set hours during which services are to be performed;
>
> (8)  The person for whom services are being performed requires the worker to devote himself or herself full time to the business of the person for whom services are being performed;
>
> (9)  The person for whom services are being performed requires that work be performed on its premises;
>
> (10)  The person for whom services are being performed requires that the worker follow the order of work set by the person for whom services are being performed;
>
> (11)  The person for whom services are being performed requires the worker to make oral or written progress reports;
>
> (12)  The person for whom services are being performed pays the worker on a regular basis such as hourly, weekly or monthly;
>
> (13)  The person for whom services are being performed pays expenses for the worker performing services;

**(14)** The person for whom services are being performed furnishes tools, instrumentalities, and other materials for use by the worker in performing services;

**(15)** There is a lack of investment by the worker in the facilities used to perform services;

**(16)** There is a lack of profit or loss to the worker performing services as a result of the performance of such services;

**(17)** The worker performing services is not performing services for a number of persons at the same time;

**(18)** The worker performing services does not make such services available to the general public;

**(19)** The person for whom services are being performed has a right to discharge the worker performing services;

**(20)** The worker performing services has the right to end the relationship with the person for whom services are being performed without incurring liability pursuant to an employment contract or agreement.

Ohio Adm.Code 4141-3-05(B). An alleged employer bears the burden of proving that a worker is not an employee. *Miracle Home* at ¶ 21.

{¶ 13} The common pleas court analyzed the 20 factors and found there was reliable, probative, and substantial evidence to support the commission's conclusion that Dublin Express had the right to direct or control the drivers in the performance of their services. The common pleas court further concluded that Dublin Express failed to demonstrate the drivers were not employees. Dublin Express argues on appeal that the common pleas court did not properly apply the 20 factors set forth in the rule. Specifically, Dublin Express cites 11 of the factors contained in Ohio Adm.Code 4141-3-05(B) that it argues do not apply to its relationship with its drivers.

{¶ 14} Dublin Express asserts it does not require particular training for drivers, as set forth in Ohio Adm.Code 4141-3-05(B)(2). Addressing this factor, the common pleas court found the drivers are required to be licensed to operate a motor vehicle and be physically able to operate a motor vehicle. The court further noted the drivers were reviewed by Dublin Express's insurance company to determine whether they were

insurable. The lease agreement provides that drivers will abide by all applicable laws, regulations, and ordinances related to the operation of a vehicle, which would include the legal requirement of holding a valid license under Ohio law.  Additionally, Ahmed testified that before a driver was permitted to begin work, a check was performed to determine whether the driver was licensed and could be insured, and that periodic checks were performed to determine whether drivers retained valid licenses.  Based on this evidence, we cannot conclude the common pleas court abused its discretion by finding this factor was present.

{¶ 15} Dublin Express also argues it does not require that services be provided by a particular worker, as set forth in Ohio Adm.Code 4141-3-05(B)(4).  However, as the common pleas court noted, Ahmed testified a driver who has agreed to transport a passenger cannot arrange for another individual to complete that task for them; it must be done by a driver who is covered by Dublin Express's insurance.  Therefore, the common pleas court did not abuse its discretion by finding this factor was present.

{¶ 16} Dublin Express further claims it does not supervise or pay the wages of its drivers, as set forth in Ohio Adm.Code 4141-3-05(B)(5).  The common pleas court concluded Dublin Express hired its drivers and paid their compensation.  Ahmed testified the fares for transporting passengers are based on contracts with various client agencies and that drivers receive 50 to 60 percent of the fare for each trip.  Passengers present a voucher to the driver, which the driver gives to Dublin Express to be redeemed from the agency. The drivers then receive their compensation in the form of a weekly check issued by Dublin Express and picked up from its office.  Based on this evidence, we cannot conclude the common pleas court abused its discretion by finding this factor was present.

{¶ 17} Dublin Express asserts it does not require set hours during which services are to be performed, as set forth in Ohio Adm.Code 4141-3-05(B)(7), does not require drivers to devote themselves full time to its business, as set forth in Ohio Adm.Code 4141-3-05(B)(8), and does not require work be performed on its premises, as set forth in Ohio Adm.Code 4141-3-05(B)(9).  The common pleas court's decision noted the hours Dublin Express's office is open and that it offers 24-hour dispatch service, but the court does not appear to have found the requirement of set hours for performance of service under Ohio Adm.Code 4141-3-05(B)(7) was present.  Similarly, the common pleas court expressly

found the factors contained in Ohio Adm.Code 4141-3-05(B)(8) and (9) were not present. We find no abuse of discretion in the common pleas court's analysis of these three factors.

{¶ 18} Dublin Express argues it does not require its drivers to "follow the order of work set by the person for whom services are being performed" as set forth in Ohio Adm.Code 4141-3-05(B)(10). The common pleas court's decision appears to suggest the court found this factor was present, noting if a passenger needs to reach a medical appointment at a specific time, the driver must transport the passenger on time and may not alter the arrival time. Ahmed testified when a client gives a specific time for an appointment, the driver must be able to meet that time requirement. If he or she cannot, the dispatcher will contact the next available driver. Ahmed also testified drivers could not transport an individual who attempted to flag them down on the street. Thus, a driver could not diverge from delivering one passenger to a medical appointment in order to pick up an additional passenger. Based on this evidence, we cannot conclude the trial court abused its discretion in analyzing this factor.

{¶ 19} Dublin Express asserts it does not pay expenses for drivers, as set forth in Ohio Adm.Code 4141-3-05(B)(13), specifically arguing it does not pay for gasoline for the vehicles. Similarly, Dublin Express claims it does not furnish tools, instrumentalities, and other materials for the drivers in performing services, as set forth in Ohio Adm.Code 4141-3-05(B)(14). The common pleas court noted in its decision that while individual drivers are responsible for buying gasoline, Dublin Express owns the vehicles and pays to insure, maintain, and repair the vehicles. Ahmed testified each vehicle is given to the driver with a full tank of gasoline at the beginning of the lease and that the driver must return it at the end of the lease with a full tank of gasoline. He also testified drivers pay for gasoline while using the vehicles. Ahmed further testified that Dublin Express owns the vehicles and insures them, as well as paying for repairs and maintenance costs. Dublin Express also provides the dispatch service that connects drivers with passengers in need of transportation. Based on this evidence, we cannot conclude the common pleas court abused its discretion in finding the factors under Ohio Adm.Code 4141-3-05(B)(13) and (14) to be present.

{¶ 20} Dublin Express claims its business model does not result in "a lack of profit or loss to the worker performing services as a result of the performance of such services,"

as set forth in Ohio Adm.Code 4141-3-05(B)(16). The common pleas court found this factor was not present. We find no abuse of discretion in the court's analysis of this factor.

{¶ 21} Finally, Dublin Express asserts the drivers have the right to end their relationship with Dublin Express without incurring liability under an employment contract or agreement, as set forth in Ohio Adm.Code 4141-3-05(B)(20). The common pleas court found this factor was present, noting the drivers could end their relationship with Dublin Express without incurring liability. This is consistent with Ahmed's testimony that drivers were able to stop taking calls and transporting passengers of their own volition and leave the job. Thus, it appears that Dublin Express agrees with the common pleas court's finding as to this factor, and we find no abuse of discretion in the court's conclusion.

{¶ 22} In addition to contesting the common pleas court's evaluation of specific factors, Dublin Express asserts that classifying the drivers as employees is inconsistent with prior decisions from this court and other Ohio courts finding taxi operators to be independent contractors. Dublin Express argues the present case is virtually identical to the facts in *Davis Cabs, Inc. v. Leach*, 115 Ohio App. 165 (10th Dist.1962). In that case, this court held a taxi driver who leased a taxi and dispatch service from a taxicab company was an independent contractor and not an employee "where, pursuant to such lease, he pays the lessor-owner fifty percent 'of the fares collected in excess of the cost of gasoline each day from the operation of said taxicab,' and where the lessor-owner exercises no control over the operation of the taxicab and the lessee-driver has no designated working hours, is not required by the lessor-owner to accept dispatched calls or keep any records and receives no compensation from the lessor-owner." *Davis Cabs* at syllabus. However, there are significant factual differences between *Davis Cabs* and the present case. In *Davis Cabs*, the drivers were "free to develop a customer business of their own," whereas in the present case there was no evidence that Dublin Express's drivers were permitted to obtain customers other than through Dublin Express's dispatch service. *Id.* at 170. At the hearing, Ahmed testified Dublin Express's drivers could not accept a passenger who flagged the driver down on the street like a typical taxi. He further testified he was not aware of any situation where a Dublin Express driver transported a passenger without using the dispatch service. Unlike the drivers in *Davis Cabs*, who were not required by the taxicab company to keep any records, Ahmed indicated on an ODJFS questionnaire that drivers were required to give

written confirmation of completing transportation service for a customer and the lease agreement provides that drivers must record and report all fares. In *Davis Cabs*, the taxi passenger paid the driver directly and the driver passed a share of that payment on to the taxicab company as consideration for lease of the cab. By contrast, under Dublin Express's business model, the driver receives a voucher from the passenger which is then given to Dublin Express to be redeemed from the appropriate agency and then the driver is paid a share of that amount by Dublin Express. Due to these differences, the result in *Davis Cabs* does not control the outcome of the present case.

{¶ 23} Dublin Express also cites cases that have considered the employment status of taxicab drivers in the context of workers' compensation, including *Coviello v. Indus. Comm.*, 129 Ohio St. 589 (1935), and *Walters v. Americab*, 118 Ohio App.3d 180 (8th Dist.1997). As with *Davis Cabs*, there are important factual distinctions between those cases and the present case. In *Coviello*, the driver paid a fixed rental fee for his taxicab each day, whereas Dublin Express's lease agreement provides the lease fee is a percentage of each fare the driver obtains. The *Coviello* decision expressly noted that "[i]f the rental charges were calculated upon a percentage basis whereby any accounting of fares collected was required, the arrangement might be construed to be one for payment of the driver upon the basis of a percentage of the earnings of the taxicab" and that, under those circumstances it might be considered a contract for hire of the driver. *Coviello* at 593. In *Walters*, the driver "kept all money he earned while on duty, and had no obligation to report his earnings to Americab." *Walters* at 183. As noted above, Dublin Express's drivers only receive a percentage of each fare and that percentage is paid by Dublin Express.

{¶ 24} Based on our review of the particular evidence presented in this case, we conclude the trial court did not abuse its discretion in affirming the commission's determination that the drivers are employees of Dublin Express and its decision is in accordance with the law. Accordingly, we overrule Dublin Express's first assignment of error.

{¶ 25} In its second assignment of error, Dublin Express argues the common pleas court denied equal protection of the law by failing to consider materials from the Ohio Bureau of Workers' Compensation ("BWC") and the National Labor Relations Board ("NLRB") relating to an audit performed by BWC and a charge filed with NLRB alleging

Dublin Express violated the National Labor Relations Act. Dublin Express filed separate motions to admit these materials as newly discovered evidence in the common pleas court. The trial court concluded the NLRB determination that Dublin Express sought to introduce did not constitute newly discovered evidence because it did not relate to factual matters that existed at the time of the hearing, but the court held it would consider the NLRB determination as persuasive authority because it was a legal determination. The court ruled it would not consider the BWC audit findings as newly discovered evidence because they were issued nearly one year before the administrative hearing and therefore could have been discovered with reasonable diligence before the hearing.

{¶ 26} R.C. 4141.26(D)(2) provides that in an appeal to the common pleas court "no additional evidence shall be received by the court," although the court may order additional evidence to be taken before the commission. "On its face, [R.C. 4141.26(D)(2)] gives the court discretion." *HumaCare-Consol. Emp. Mgt., Inc. v. Ohio*, 10th Dist. No. 15AP-200, 2016-Ohio-715, ¶ 31. Therefore, we review the common pleas court's decision not to admit the BWC audit findings for abuse of discretion.

{¶ 27} The description of findings contained in the BWC report that Dublin Express sought to introduce consisted of a few sentences summarily concluding that the drivers were independent contractors who owned or leased their vehicles, set their own operational hours, and were available to the general public for employment or contract services. As explained above, pursuant to R.C. 4141.01(B)(1) and Ohio Adm.Code 4141-3-05, ODJFS undertakes an extensive, multifactor analysis in determining whether a worker is an employee or an independent contractor. Due to its summary nature, the BWC report Dublin Express sought to introduce did not provide much analysis or discussion of the agency's underlying reasoning. Additionally, the report was issued well before the commission hearing and therefore did not constitute newly discovered evidence that could not have been introduced before the commission. Thus, the common pleas court did not abuse its discretion by failing to admit the report.

{¶ 28} The common pleas court ruled it would consider the NLRB determination as persuasive authority and did not abuse its discretion by refusing to admit the BWC report. Accordingly, we overrule Dublin Express's second assignment of error and hold that Dublin Express's constitutional argument is therefore moot and will not be considered.

## IV. Conclusion

{¶ 29} For the foregoing reasons, based on the facts of this case, we overrule Dublin Express's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and BRUNNER, J., concur.

———————————