OPINION
{¶ 1} In the instant appeal, submitted on the record and briefs of the parties, appellant, Frank Dolence, Jr., appeals the judgment of the Lake County Court of Common Pleas, granting directed verdict in favor of appellee, Charles F. Clark. The directed verdict affirmed the determination of the Ohio Bureau of Workers' Compensation approving Clark's claim. We reverse the judgment of the trial court and remand for proceedings consistent with this opinion. *Page 2 
 {¶ 2} The following facts are not in dispute. Dolence and Clark were friends for over twenty years, with many mutual acquaintances. The men would regularly socialize together. Around 2002 or 2003, Clark began performing odd jobs at Dolence's residence for extra money. There was no written contract, no regular work schedule, no "regular" duties, no records or receipts, and Clark was paid in cash for his work.
 {¶ 3} On February 28, 2004, Clark sustained multiple serious burn injuries while burning branches in Dolence's back yard.
 {¶ 4} Clark subsequently filed an application for claim to the Bureau of Workers' Compensation ("BWC"). After Clark's claim was initially disallowed by the BWC District Hearing Officer, the claim was allowed on appeal to the BWC Staff Hearing Officer. Dolence subsequently appealed this decision to the Lake County Court of Common Pleas.
 {¶ 5} The matter was tried before a jury on January 22, 2007. Clark moved for a directed verdict, and the court subsequently granted his motion on January 26, 2007.
 {¶ 6} Dolence timely appealed, raising the following as his sole assignment of error:
 {¶ 7} "The trial court committed prejudicial error when it granted the plaintiff's motion for a directed verdict."
 {¶ 8} The standard for granting a directed verdict is set forth in Civ.R. 50(A)(4) which provides:
 {¶ 9} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds *Page 3 
could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 10} "Conversely, if reasonable minds could come to more than one conclusion as to the evidence presented, then a trial court should permit the issue to go to the jury." Lapping v. H M Health Servs., 11th Dist. No. 2000-T-0061, 2001-Ohio-8723, 2001 Ohio App. LEXIS 5634, at *5, citing White v. Ohio Dept. of Transp. (1990), 56 Ohio St.3d 39, 45.
 {¶ 11} Motions for directed verdict test the legal sufficiency of the evidence, and therefore present a question of law, "even though in deciding such a motion it is necessary to review and consider the evidence." Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6,13. Accordingly, a reviewing court "must conduct a de novo review of the trial court's judgment." Lapping, 2001 Ohio App. LEXIS 5634, at *6 (citation omitted). In conducting that review, a court is not to consider the weight of the evidence or the witness' credibility. Id. (citation omitted). Rather, an appellate court, like the trial court, "must construe the evidence most strongly in favor of the party against whom the motion is directed." Howell, 102 Ohio App.3d at 13, citingStrother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. "Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions," the granting of a motion for directed verdict is inappropriate. Id., citing Ramage v.Cent. Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 109;Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 137. *Page 4 
 {¶ 12} The sole dispositive issue addressed by the trial court was whether or not Clark was an "employee" for the purposes of the Ohio Workers' Compensation Act.
 {¶ 13} The Act defines the term "Employee," in relevant part, as "[e]very person in the service of any person * * * that employs * * * one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from any single household and casual workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single employer * * *." R.C. 4123.01 (A)(1)(b)(i) (emphasis added).
 {¶ 14} Dolence argues that the trial court erred by granting a directed verdict, because the evidence, when viewed in the light most favorable to him as the non-moving party, presents a genuine issue of fact for the jury as to whether Clark is an "Employee" under R.C.4123.01. For the reasons that follow, we agree.
 {¶ 15} As Clark correctly notes, "Ohio's system of workers' compensation has, historically, resolved questions more in favor of coverage than against." Skaggs v. Mayfield (1989), 62 Ohio App.3d 355,358 (citation omitted). This has been construed to mean that "coverage is available to any household [or casual] worker who according to his contract of employment will in the quarter concerned earn $160 or more and who, but for his injury, would have earned that amount." Id. at 357. Clark cites to R.C. 4123.95 for the proposition that courts "shall * * * liberally construe" provisions of the Workers' Compensation Act "in favor of employees." *Page 5 
 {¶ 16} However, it does not necessarily follow that a household or casual worker is automatically entitled to definition as an employee where there is no clear evidence that he has met the statutory requirements.
 {¶ 17} "R.C. 4523.95, by its very terms, does not apply to the determination of employee status[;] * * * the statute does not state that we are to liberally construe the meaning of the term `employee.' Until a person is determined to be an employee, the workers' compensation statutes do not even apply." Koch v. Conrad (Dec. 9, 1997), 10th Dist. No. 97APE05-663, 1997 Ohio App. LEXIS 5607, at *6. "If the relation ofemployer and employee does not exist[,] the provisions of the act haveno application." Id. at *7 (citations omitted) (emphasis sic).
 {¶ 18} In the instant matter, the following undisputed evidence was presented at trial:
 {¶ 19} Between 2002 and 2003, Clark "was going through some hard times," including losing his place to live, and loss of his Social Security Disability payments after receiving an eye operation. Clark, who worked mornings at Burger King, eventually began doing odd jobs at Dolence's home to supplement his income.
 {¶ 20} According to Dolence, about "once every two weeks, maybe once or twice a month, sometimes three times a month, "Chuck would call me on my cell," and Dolence would pick Clark up. They would then drive back to Dolence's home, where Clark would perform jobs like wiping the kitchen and bathroom floors, doing dishes, vacuuming, and occasional yard work. Clark would spend anywhere from one to three hours working each time he was there, and Dolence would pay him cash for his work, with Clark's wage averaging between $7.00 for one hour and $7.50 per hour if Clark *Page 6 
worked two hours or more, for an approximate total of $30 per month. After completing whatever work was done on any given day, Dolence would drive Clark back to his home, where they would watch television, drink beer, and play cards. No records or receipts were ever kept for the payments made or the hours worked.
 {¶ 21} On the day of Clark's injury, Dolence "went over to pick Chuck [Clark] up in the morning." After visiting with Clark for approximately an hour and a half, the men drove to Dolence's home. Dolence told Clark that he wanted him to burn a pile of branches that had accumulated in the back yard. According to Dolence's testimony, he suggested to Clark he could either start the fire by using a can of mineral spirits, which he kept by the side of the back porch, or use newspapers, which were kept on the porch. Dolence then left to go wash his car. While burning the branches as directed, Clark was injured.
 {¶ 22} Viewing this evidence in the light most favorable to Dolence as the non-moving party, there is "sufficient evidence relating to an essential issue," i.e. whether Clark earned, or would have earned, had he not been injured, $160 per quarter, which would permit "reasonable minds to reach different conclusions," based upon the aforementioned testimony. Accordingly, the trial court's grant of directed verdict was error.
 {¶ 23} Additionally, we note that, even though a household or casual worker is "no longer excluded from mandatory coverage on the basis of the work being casual or regular" if the worker "earns $160 or more in a quarter from a single household," the worker "can nevertheless be excluded from coverage if [he or she] is not `in service.'" Owners Ins.Co. v. Snyder (Mar. 15, 1991), 6th Dist. No. 89FU000020, 1991 Ohio App. *Page 7 
LEXIS 1051, at *10. Thus, a determination must still be made regarding whether a household or casual worker is an independent contractor or an employee. Id. "Whether one is an independent contractor or in servicedepends upon the facts of each case." Id. (citation omitted) (emphasis added). Based upon the record, there is a genuine issue of fact for the jury regarding whether or not Clark was "in service" under the ambit of the statute.
 {¶ 24} For the foregoing reasons, we hold that the trial court erred in granting a directed verdict in favor of Clark. The aforementioned matters should have been given to the jury to decide. Dolence's sole assignment of error has merit.
 {¶ 25} We reverse the judgment of the Lake County Court of Common Pleas and remand this matter for proceedings consistent with this opinion.
TIMOTHY P. CANNON, J., concurs,
MARY JANE TRAPP, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.